**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| ROBERT REEVES, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:05-3202-CMC-BM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| UNITED PARCEL SERVICE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This action has been filed by the Plaintiff asserting claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq.; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq. Plaintiff is a former employee of the Defendant United Parcel Service.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 16, 2007. Plaintiff thereafter filed a memorandum in opposition, with exhibits, on February 5, 2007, following which Defendant filed a reply memorandum on February 19, 2007. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

The Defendant is a delivery company which delivers packages throughout the world. Defendant's United States operations are divided into ten geographic regions, each of which is then further divided into a number of districts. The State of South Carolina is a district within the Defendant's Atlantic Region. Each district is managed by a district manager. Bennett Affidavit, ¶ 2.

Plaintiff began his employment with the Defendant in July 1985 as an automotive mechanic. In July 1987, he was promoted to the position of automotive supervisor. Plaintiff was based in Columbia, but his job duties also required him to travel throughout the State. Plaintiff's Deposition, pp. 39-41.

As part of the requirements of his job, Plaintiff was required to maintain a United States Department of Transportation (DOT) Medical Examiner's Certificate which allowed him to drive commercial motor vehicles. Plaintiff's Deposition, pp. 38-39; see Higgins Affidavit, ¶ 4; see also 49 C.F.R. §§ 390.5, 391.41, 391.43(a). This certificate was also referred to as a DOT certification card. Plaintiff's Deposition, pp. 46-47, and Exhibit 3, at 1; Higgins Affidavit, ¶¶ 11-12, and Exhibit 3. Defendant contracts with another company, Continuum (a/k/a "Clin-Net"), to assist the Defendant with its DOT health and safety standard compliance requirements. Plaintiff's Deposition, pp. 78-80; Higgins Affidavit, ¶ 7.

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



The file reflects that Plaintiff suffers from narcolepsy[3], for which he takes Providial to control his symptoms. Plaintiff testified that, during his periodic physicals for receiving DOT certification, he would present a letter from his treating physician stating the medications he was taking and that he was deemed fit to drive by his doctor. Plaintiff's Deposition, pp. 85-86. Although these DOT physicals were usually conducted every two years, with DOT certification then being provided for that two year period, due to Plaintiff's narcolepsy he would only receive a one year DOT card from the medical examiner. Plaintiff's Deposition, pp. 74, 83-88; Higgins Affidavit, ¶ 5; see 49 C.F.R. § 391.45(b)(1).

The record reflects that following his physical of May 5, 2003, Plaintiff was again issued a one year DOT certification card by the medical examiner. Plaintiff's Deposition, pp. 83-88. However, in June 2003, Plaintiff received a notification that his DOT certification card was being cancelled due to his diagnosis of narcolepsy. Plaintiff's Deposition, pp. 88-91. This revocation was due to the Defendant having received notice from Continuum that the issuance of the one year DOT card was not proper under DOT's published guidelines, which restrict the issuance of such cards to individuals suffering from narcolepsy, regardless of whether the individual's symptoms are being treated with medication. Higgins Affidavit, ¶ 9, and Exhibit 1; see 49 C.F.R. § 391.41; see also Conference on Neurological Disorders and Commercial Drivers, available at

---

[3]Narcolepsy is "overwhelming excessive daytime sleepiness (EDS), even after adequate night time sleep. A person with narcolepsy is likely to become drowsy or to fall asleep, often at inappropriate times and places. Daytime naps may occur with or without warning and may be physically irresistible. These naps can occur several times a day. They are typically refreshing, but only for a few hours. Drowsiness may persist for prolonged periods of time. In addition, night-time sleep may be fragmented with frequent awakenings." http://en.wikipedia.org/wiki/Narcolepsy.



http://www.fmcsa.dot.gov/rulesregs/medreports.htm, at 59. Plaintiff's one year DOT certification card was replaced with a 60 day certification, with a requirement that Plaintiff submit additional information concerning his condition. Higgins Affidavit, ¶ 9, and Exhibit 1; Plaintiff's Deposition, pp. 88-92, 107-108.

Continuum subsequently notified the Defendant on or about June 23, 2003 that Plaintiff was permanently disqualified from DOT certification due to his medical condition. Higgins Affidavit, ¶ 10, and Exhibit 2; Plaintiff's Deposition, Exhibit 21. Following this decision, Plaintiff continued to work as an automotive supervisor but was prohibited from operating a package car[4] due to the loss of his DOT certification. Plaintiff's Deposition, pp. 291-292; Higgins Affidavit, ¶¶ 10-11.

Although automotive supervisors are required to have DOT certification so that they can operate the Defendant's package cars, Plaintiff was advised by Sheila Higgins, Occupation Health Manager for the South Carolina District, that the Defendant would consider whether he could obtain a job related accommodation under the Americans with Disabilities Act.[5] Plaintiff's Deposition, pp. 99-101, 114-119, and Exhibit 23; Higgins Affidavit, ¶¶ 2, 10-12, and Exhibit 3. However, on December 16, 2003 Plaintiff was informed by James Lott, the Human Resources Manager for the South Carolina District, and Kerry Matney, his direct supervisor, that there would be no accommodation, and that because he remained unable to perform the duties of his automotive supervisor position, he was being placed on paid administrative leave effective December 31, 2003. Plaintiff's Deposition, pp. 127-128, 133-140, and Exhibit 27; Lott Affidavit, ¶¶ 2, 7-8. While

---

[4] The Defendant makes its deliveries in brown delivery trucks, which the Defendant refers to as package cars. Bennett Affidavit, ¶ 4.

[5] 42 U.S.C. § 12101, et. seq.

4

Plaintiff was out on administrative leave, he applied for and received disability benefits. Plaintiff's Deposition, pp. 209-210. On June 24, 2004, Plaintiff was notified that his eligible leave period under the Defendant's income protection plan had expired, and he was terminated effective June 23, 2004. Plaintiff's Deposition, pp. 60-62, 145-147 and Exhibit 8 at 96, Exhibits 29 and 30; Lott Affidavit, ¶¶ 10-11, and Exhibit 2.

Plaintiff thereafter filed an administrative charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) on or about September 28, 2004.[6] Plaintiff's Deposition, Exhibit 32. In this administrative charge, Plaintiff asserted that he had been discriminated against on the basis of his race (African-American), age (fifty-two (52) years old), and disability. Id. Plaintiff requested and received a right to sue notice from the EEOC in August 2005, with the notice being mailed to the Plaintiff on August 12, 2005. Plaintiff's Deposition, pp. 186-188, and Exhibits 33 and 34. Plaintiff received this right to sue notice on August 16, 2005. Plaintiff's Deposition, pp. 188-190; see also Defendant's Exhibit E.

Plaintiff then filed this action, pro se, in United States District Court on November 15, 2005, asserting claims for race discrimination under Title VII and age discrimination under the ADEA. See Complaint, ¶¶ 14-20 (first and second causes of action). Plaintiff subsequently had a notice of appearance filed by present counsel on March 7, 2006, and he is therefore no longer proceeding pro se.

---

[6]As South Carolina is a deferral state, Plaintiff could file his administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC). Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

5



**Discussion**

As noted, the Defendant filed for summary judgment on January 16, 2007. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Defendant argues, <u>inter alia</u>, that it is entitled to summary judgment on Plaintiff's claims because this action was not filed within ninety (90) days of Plaintiff having received his notice of right to sue from the EEOC. By statute, a civil action under either Title VII or the ADEA must be filed within ninety (90) days of the date of receipt by a claimant of a duly issued notice of right to sue from the EEOC; 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); <u>see also</u> <u>Aziz v. Orbital Scis. Corp.</u>, No. 98-1281, 1998 WL 736469, at *1 (4th Cir. October 19, 1998) ["Title VII and the ADEA allow an aggrieved party ninety days after receipt of a right-to-sue letter from the EEOC to file a civil action"]; and if not filed within this time period, it is generally deemed to be untimely and the individual is barred from pursuing their claim. See <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-150 (1984), <u>reh'g denied</u>, 467 U.S. 1231 (1984); <u>Harvey v. City of New Bern Police Dep't</u>, 813 F.2d 652, 654 (4th Cir. 1987). According to the undisputed facts, Plaintiff received his right to sue notice on August 16, 2005, but did not file his <u>pro se</u> Complaint until November 15, 2005, ninety-one (91) days later.

The fact that this lawsuit was filed only one day after the expiration of the ninety day

6



deadline does not save Plaintiff from the application of the filing statute, nor does the fact that Plaintiff originally filed this action pro se. See Dixon v. Digital Equipment Corp., No. 92-1483, 1992 WL 245867 at **1 (4th Cir. September 30, 1992) [dismissing as untimely a lawsuit filed by a pro se plaintiff only ninety-one days after receipt of the notice of right to sue]; Harvey, 813 F.2d 654 [dismissing suit filed ninety-one days after receipt of the notice of right to sue]; Truitt v. County Wayne, 148 F.3d 644, 647 (6th Cir. 1998) ["everyone, 'even uncounseled litigants must act within the time provided by statues and rules.'"], quoting Williams-Guice v. Board of Educ., 45 F.3d 161, 165 (7th Cir. 1995); Brown v. Consolidated Freightway, 152 F.R.D. 656, 658-659 (N.D.Ga. 1993) ["[F]ederal complaints filed even one day after the expiration of this ninety day period are untimely and...subject to dismissal...."].  Therefore, absent some valid exception recognized by statute or in the caselaw, Plaintiff failed to timely file this lawsuit, subjecting it to dismissal.

Plaintiff first argues that this action should not be deemed to be untimely because the copy of the right to sue letter mailed to Plaintiff's counsel[7] was sent to the law firm's previous address, instead of its present address, and that as a result counsel did not receive Plaintiff's right to sue letter until August 22, 2005. Plaintiff argues that the ninety day limitations period did not start to run until receipt of the right to sue letter by his counsel, citing Babagallo v. Potter, No. 04-839, 2005 WL 2460725 (M.D.N.C. October 4, 2005), and that this case was timely filed within ninety days of counsel's receipt of the letter. However, while the Court in Babagallo did run the ninety day limitations period from the date Plaintiff's counsel in that case received the right to sue letter, in that case counsel received the right to sue letter *prior* to the Plaintiff, not after. Babagallo, at *3. In any

---

[7]Plaintiff was represented by his current counsel during the time he was pursuing his administrative remedies before SCHAC and the EEOC. See Plaintiff's Attachment 2.

7



event, the Defendant correctly points out that, to the extent the Babagallo decision can be read as holding that the limitations period begins to run from the date of counsel's receipt of the right to sue letter, no matter when the claimant himself actually received the letter, that such a holding is directly contrary to Supreme Court precedent on this issue. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92-93 (1990) [affirming Fifth Circuit's holding that the time for filing a lawsuit "begins to run on the date that the EEOC right to sue letter is delivered to the offices of a formally designated counsel or to the claimant even if the counsel himself did not actually receive notice until later"]; see also Griffin v. Prince William Hospital Corp., 716 F.Supp. 919, 921 (E.D.Va. 1989) ["[T]he 90 day period begins to run on the date the EEOC notice is delivered to the claimant or to the attorney, whichever is earlier"]; McCaskill v. Dep't of the Army, No. 05-536, 2006 WL 314555, at *4 (M.D.N.C. February 8, 2006) ["[N]otice of the [right to sue] is 'received' when the letter is delivered to either the claimant or his attorney, whichever occurs first"]; Seitzinger v. Reading Hosp. & Med.Ctr., 165 F.3d 236, 239, n. 1 (3rd Cir. 1999) [holding that the ninety day period begins "when either the claimant or her attorney receives a right to sue letter, whichever is earlier"]; Threadgill v. Moore, U.S.A., Inc., 269 F.3d 848, 850 (7th Cir. 2001) ["The 90-day time period commences when either the claimant or her attorney actually receives the right-to-sue letter, whichever is earlier"]; Dell Korth v. Supervalu, Inc., 46 Fed.Appx. 846, 847 (7th Cir. 2002) ["If [Plaintiff] never received the right to sue letter, then the 90-day period began running on September 24th when his attorney allegedly received a copy. But if [Plaintiff] received a copy of the right to sue letter before his attorney did, [Plaintiff's] receipt of the letter would mark the start of the 90-day period...."]; Carter v. Potter, No. 06-786 2006 WL 2583569, at *1-*3 (E.D.Pa. September 5, 2006) ["Federal courts have consistently held that the statutory 90-day time period for filing a discrimination claim begins to run



when either the plaintiff or his attorney receives a copy of the right to sue letter, whichever occurs first"]; *cf.* Noe v. R.A. Ward, 754 F.2d 890, 892 (10th Cir. 1985) ["[P]laintiff herself received notice more than 90 days before suit was filed. She may not now complain that the 90 days did not begin to run until the receipt of the 'Right to Sue" letter by her attorney seven days later"]. Plaintiff's arguments to the contrary are without merit.

In the alternative, Plaintiff argues that his claim should not be barred because the requisite statute of limitations should be equitably tolled, noting that Plaintiff initially filed his Complaint pro se, and also arguing that Defendant's failure to seek dismissal of this case on this ground earlier in the litigation has prejudiced the Plaintiff because "the Defendant has been on notice concerning Plaintiff's potential statute of limitations issues and could have asked that the Court dismiss Plaintiff's claims long before the Plaintiff and Defendant incurred enormous legal fees from taking depositions, completing discovery, and filing countless motions and other memoranda with this Court." These arguments do not, however, provide a basis for equitable relief under the applicable caselaw.

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992), vacated on other grounds, 113 S.Ct. 1940 (1993) [quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)].

In other words, "[e]quitable relief is reserved for only the most deserving

9



complainants," usually where there exists affirmative misconduct. Id. at 1363.  No evidence of any such misconduct has been presented in this case.  Rather, it is readily apparent that Plaintiff's failure to timely file this action is due to his failure "to exercise due diligence in preserving his legal rights." Id; United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) [holding that pro se status and ignorance of the law do not justify equitable tolling]; McCaskill, 2006 WL 314555, at *4; Brown, 152 F.R.D. at 658-659 ["while the [Court] takes note of Plaintiff's status as a pro se litigant, this status does not excuse Plaintiff's failure to comply with the established statute of limitations from the filing of his action"]; see also Portis v. World Omni, No. 00-0047, 2000 WL 726220 at *3 (S.D.Ala. May 16, 2000) ["The plaintiff's efforts to obtain legal representation are likewise insufficient to permit equitable tolling. A plaintiff is not required to prosecute a lawsuit with counsel but may proceed pro se, and the lack of legal representation does not trigger equitable tolling."].

        Plaintiff's argument concerning Defendant's purported failure to assert this defense earlier in these proceedings is also without merit.  Defense counsel did not receive a copy of the notice bearing Plaintiff's handwritten date of receipt until September 12, 2006.  Defendant's Exhibit E; see also Defendant's Brief, at p. 13, n. 5.  Defendant's motion for summary judgment was filed in January 2006.  The undersigned can discern no unreasonable delay under these facts.  Further, there is no requirement that counsel pursue potentially dispositive issues in a case in a piecemeal fashion, rather than presenting all potentially dispositive claims at one time in a properly filed motion for summary judgment. *Cf.* Fernandez v. Baker Nat'l Life Ins. Co., 906 F.2d 559, 569 (11th Cir. 1990) [noting that piecemeal consideration of successive motions for summary judgment is not generally favored], citing Allstate Fin. Corp. v. Zimmerman, 296 F.2d 797, 799 (5th Cir. 1961).

        In reaching the conclusion set forth hereinabove, the undersigned is not signaling a

10



lack of concern over Plaintiff's claims. However, the Fourth Circuit has strictly construed the statutory filing requirements for discrimination cases, holding that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)); see Poteat v. Mack Trucks Inc., No. 96-1437 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979); Freeman v. City of Riverdale, No. 06-2230, 2007 WL 1129004, at *5 (N.D.Ga. Apr. 16, 2007) ["the federal courts have strictly enforced [the] ninety-day statutory limit"]. Therefore, Plaintiff is not entitled to equitable tolling in this case.

## Conclusion

Plaintiff's Complaint was not timely filed under the applicable statutes and caselaw pertaining to lawsuits filed under Title VII and the ADEA. Therefore, based on the foregoing, the undersigned has no choice but to recommend that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

July 20, 2007

11

